## Richmond.

## WRIGHT v. INDEPENDENCE NATIONAL BANK.

### FEBRUARY 8, 1899.

Absent, Cardwell, J.

1. PRINCIPAL AND SURETY—*Release—Extension of Time to Second Endorser of Negotiable Paper.*—An agreement between the holder of a negotiable note and a second endorser thereof to extend the time of payment does not release the first endorser, though a mere surety for the maker. The first endorser may still pay the note and sue the maker, or may exercise any of the rights which a surety may assert for his protection against his principal.

2. APPEAL AND ERROR—*Erroneous Instructions—Harmless Error.*—This court will not reverse the action of the trial court on account of erroneous instructions given when it can see from the whole record that, under proper instructions, a different verdict could not have been rightly found, or that the exceptant could not have been prejudiced by the action of the court in giving the instructions given, or in refusing those which were rejected.

Error to a judgment of the Corporation Court of the city of Lynchburg rendered September 8, 1897, in a proceeding by motion for a judgment wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

This is the second action by the same plaintiff against the same defendant on the same note. The first action was dismissed, and it is claimed by the plaintiff in error that he is released because he endorsed the note for the accommodation of the maker, and that the first action was dismissed without

his knowledge or consent, upon an agreement made with the maker of the note, for a valuable consideration, to forbear to sue for a definite time. . The agreement to dismiss was made with one B. E. Hughes, vice-president of the Traders Bank, which bank was the second endorser of the note. It was claimed by the plaintiff in error that Hughes was acting for the maker of the note, but this was denied. This was the chief controversy in the case, and was decided adversely to the plaintiff in error.

*J. E. Edmunds* and *J. E. Hughes*, for the plaintiff in error.

*John H. Lewis*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The defence relied on in this case is that the defendant, an accommodation endorser, had been released by an agreement of the creditor extending the time for the payment of the writing sued on. That paper was a negotiable note made by W. P. Roberts, payable to H. D. Wright, or order, at the Traders Bank of Lynchburg, endorsed by Wright to that bank, and by it endorsed to and held by the plaintiff as collateral, with other notes, to secure the payment of a note due to it from the Traders Bank. After actions at law had been brought by the plaintiff on the notes held by it as collateral, including the note sued on, the plaintiff made a verbal contract with the Traders Bank by which it was agreed that if the latter would curtail or reduce its note to the plaintiff to $1,000, that it (the plaintiff) would allow the Traders Bank to give a new note for that sum, payable in thirty days, and dismiss all the suits on the collaterals, upon the payment of the court costs and attorney's fees. The curtailment was made, the new note given, the costs and attorney's fees paid, and the suits dismissed.

In the view we take of this case, it is unnecessary to consider whether the agreement made between the plaintiff and

the Traders Bank was such an agreement giving time for the payment of the note as would have discharged the defendant if the agreement had been made with the maker of the note, instead of the Traders Bank, the last endorser.

The defendant's counsel insists that, whilst the agreement was made with the vice-president of the Traders Bank, he was the agent of the defendant to have the suit against him dismissed, and that, under the facts of the case, the agreement must be regarded as having been made with the maker of the note as well as with the Traders Bank. In this he is mistaken. The record not only fails to show that the maker was any party to the agreement, but it shows clearly that he was not.

The first question, therefore, to be considered is whether an agreement for indulgence, which will discharge or release the first endorser, can be made with any other person than the maker of the note, or principal debtor.

In 2 Daniel on Negotiable Instrument (4th Ed.), sec. 1324, it is said : " The agreement for indulgence, in order to discharge the drawer or indorser, must be made with the maker or acceptor who is the principal debtor ; and if it be made with a third party, it will not affect the drawer's or indorser's rights or remedies, although such third party may have his appropriate remedy for breach of the contract with him."

The text writers generally, in discussing the character of the agreement which will operate as a discharge of the endorser, drawer, or surety, seem to treat it as a matter of course that the agreement must be with the principal debtor. 2 Brandt on Suretyship, &c., sec. 342 ; Baylies on Sureties, &c., p. 240 ; 1 Parsons on Bills and Notes, p. 238 ; Edwards on Bills and Prom. Notes, p. 567 ; 24 Amer. and Eng. Enc. Law, p. 238 ; 5 Rob. Pr. 769. And this would seem to be necessarily so from the grounds upon which it is held that the endorser, drawer, or surety is discharged from liability.

The reason given why the extension of time for payment discharges the endorser, drawer, or surety, is because the creditor

Opinion.

thereby inflicts an injury on him, and deprives him of the means of relieving himself, either by paying the debt, and immediately proceeding against the principal (being substituted to the creditor's rights), or by filing his bill *quia timet* to compel the debtor to pay the creditor, for the surety's exoneration; for if the creditor could not himself, in consequence of his own agreement, compel the principal debtor to pay, neither could the endorser, drawer, or surety who, in such case, asserts the rights of the creditor for his own safety.    *Norris* v. *Crummey*, 2 Rand. at pp. 333-4; *Shannon* v. *McMullin*, 25 Gratt. 212, 213; 2 Dan. on Neg. Int., sec. 1313.

But if the agreement of the creditor be made with some other person than the principal debtor, what is there to prevent the endorser, drawer, or surety from paying the debt, and proceeding at once against the principal, or from requiring the creditor to forthwith institute suit on the contract as provided by sec. 2890 of the Code, or from filing his bill *quia timet?*   The principal debtor, being no party to the agreement, and having paid no consideration for the promise, cannot rely on it.   This was the view taken by the court in *Frazer* v. *Jordan*, 8 Ellis & Blackburn 303, where the agreement was made with a stranger. In that case it was said : " We think that the doctrine ought not to be extended to the case of a contract with a stranger. The principal debtor, having given no consideration for the promise, has no ground to complain of a breach of it, and cannot say that faith has been broken with him.   There is no privity of contract with him; and we see nothing on which any right, either at law or in equity (see Lord Abinger's observations in *Lyon* v. *Holt*, 5 M. & W. 253-254), for him to insist upon such contract, can be founded.   The stranger may have some private reason of his own to wish for some indulgence to be shown, and, if he has given a good consideration, may be entitled to damages, nominal, large, or small, according to any legal interest he may have, but surely he is the only person to take advantage of his contract."

The agreement relied on in this case having been made between the holder of the note (the plaintiff) and the last endorser upon it, did not prevent the first endorser (the defendant) from paying the debt, and proceeding at once against the maker, or from exercising any rights which a surety may assert for his protection against his principal. The agreement did not discharge the first endorser from his liability on the note, and furnished no defence against the plaintiff's recovery.

The action of the court in giving and refusing certain instructions is assigned as error.

It is unnecessary to consider that assignment of error, for if it were conceded that the action of the court was erroneous, as claimed, it is immaterial, for under the facts of the case, upon correct instructions, a different verdict could not have been rightly found by the jury. And it is the settled rule of this court, recognized and acted upon in numerous cases, not to reverse where the court can see from the whole record that under correct instructions a different verdict could not have been rightly found, or that the exceptant could not have been prejudiced by the action of the court in giving the instructions given, or in refusing those which were rejected. *Richmond Rwy. Co.* v. *Garthright*, 92 Va. 627, 639; *Brighthope Rwy. Co.* v. *Rogers*, 76 Va. 443, 451.

We are of opinion that the judgment complained of is right, and that it should be affirmed.

*Affirmed.*